

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JAMES M. WORTHEM (#B-12624), | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 07 C 7255 |
| v. | ) |
| | ) Judge James B. Zagel |
| JENNIFER HALL, ET AL., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, James M. Worthem, an inmate presently incarcerated at Pontiac Correctional Center, has brought this *pro se* civil rights action pursuant to 28 U.S.C. 1331(a) and *Bivens v. Six Unknown Agents*, 403 U.S. 388 (1971). In his amended complaint, Plaintiff alleges that the Defendants, F.B.I. agents Hall and Moreland (hereinafter, "Defendants"), violated his constitutional rights by failing to protect him while in the custody of the Illinois Department of Corrections (hereinafter, "IDOC). Plaintiff also named the United States as a Defendant in his amended complaint pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2675(a), but Plaintiff's FTCA claim was dismissed on January 29, 2009, for failure to exhaust administrative remedies.

Presently before the Court is Defendants' motion to dismiss Plaintiff's amended complaint for failure to state a claim. Additionally, Plaintiff has filed a motion seeking to amend his complaint, to re-allege his FTCA claim against the United States and a motion for leave to submit an exhibit. For the reasons stated in this order, Defendants' motion to dismiss granted, and Plaintiff's motions are denied.

## BACKGROUND

Plaintiff alleges in his amended complaint that some time around the end of 2005, he began working with Defendants on several narcotics investigations, wearing wires, tracking devices, and mini-cameras. He also states that the F.B.I. gave him enough United States currency to purchase quantities of crack cocaine from suspected and well-known drug dealers and ranking members of the "Satan Disciples" street gang. Plaintiff is a former member of the street gang, but renounced his membership and involvement in gang activity and agreed to act as an informant in spite of the potential danger he faced from gang members who have murdered other fellow gang members.

Plaintiff states that he was shot by a gang member during his cooperation with the F.B.I. but that he continued cooperating with the F.B.I. in the ongoing investigation. In November of 2006, he was contacted by the F.B.I. and notified that the investigation was coming to a close and that they were prepared to arrest two suspects. Plaintiff was told that the two suspects would never find out his participation in the investigation leading to their arrest. Nevertheless, Plaintiff alleges, the two suspects somehow found out about his involvement and put a "hit" out on him.

Plaintiff alleges he was illegally arrested for robbery on April 22, 2007. However, he indicates no involvement by Defendants in his arrest. He does, however, state that he contacted them to attempt to solicit their intervention, because he feared for his safety in prison due to his involvement in the F.B.I. narcotics investigation. According to the complaint, when Plaintiff was incarcerated within the IDOC, he was first placed in general population, but then, pursuant to his request, based on his security concerns, was transferred to a different facility and placed in

segregation for his safety. He alleges he was subjected to threats of violence by other inmates because of his involvement with the F.B.I.

Plaintiff states in his amended complaint that on July 25, 2007, while being transferred to Skokie on a court writ, he was violently assaulted by inmates. He alleges that as a result of the attack, he required 5 stitches in his left ear, and suffered multiple cuts, bruises, and lumps on and around his face, head, and back. Plaintiff claims his assailants were the same inmates who threatened him harm because of his involvement in the F.B.I. narcotics investigation.

Plaintiff finally alleges that on September 26, 2007, while in court in Skokie, he was again attacked, this time by the bailiff in the court room. He makes no allegation that this final assault was a result of his work on the F.B.I. investigation.

Plaintiff states that Defendants violated his constitutional rights by not protecting him from harm while incarcerated within the IDOC. He claims violation of his Fourteenth Amendment right to equal protection. He further alleges that his Eighth Amendment rights were violated because Defendants were deliberately indifferent to a serious threat to his safety. He brings suit against Defendants in both their individual and official capacities.

## ANALYSIS

### A. Defendants' Motion to Dismiss.

A complaint need only provide a "short and plain statement of the claim showing that the pleader is entitled to relief" that sufficiently provides the defendant with "fair notice" of the claim and the claim's basis. Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, (2007). A plaintiff demonstrates that he is entitled to relief by showing through his allegations that

"it is plausible, rather than merely speculative, that he is entitled to relief." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008) (quotation omitted); *see also Bell Atlantic*, 550 U.S. at 555-57.

The allegations "must actually *suggest* that the plaintiff has a right to relief, by providing allegations that raise a right to relief above the speculative level." *Tamayo*, 526 F.3d at 1084 (quotation omitted). In making this determination, the complaint is construed in the light most favorable to the plaintiff, accepting as true the well-pleaded allegations, and drawing all reasonable inferences in the plaintiff's favor. *Tamayo*, 526 F.3d at 1081. Furthermore, *pro se* complaints are to be liberally construed. *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Kaba v. Stepp*, 458 F.3d 678, 681 (7th Cir. 2006). However, a plaintiff can plead himself or herself out of court by pleading facts that undermine the allegations set forth in the complaint. *See, e.g., Kolupa v. Roselle Park Dist.*, 438 F.3d 713, 715 (7th Cir. 2006).

Defendants argue that Plaintiff fails to state a *Bivens* claim against them in both their individual and official capacities. Plaintiff's only allegation as to both Defendants is that they failed to protect him from harm while he was incarcerated within the Illinois Department of Corrections on an unrelated arrest for parole violation, stemming from his alleged involvement in the robbery on April 22, 2007. Plaintiff brings suit against Defendants in both their official and individual capacities.

A *Bivens* action is analogous to an action brought pursuant to 42 U.S.C. § 1983 in that it recognizes a private right of action for damages against a federal agent acting under color of federal law for the agent's violations of federal constitutional rights. *See Carlson v. Green*, 446 U.S. 14, 18 (1980). Claims filed against government officers in their official capacity are actually claims against the government entity for which the officers work. *See Kentucky v. Graham*, 473 U.S. 159, 167

4

(1985); *Guzman v. Sheahan*, 495 F.3d 852, 859 (7th Cir. 2007); *see also Hernandez v. Joliet Police Dep't*, 197 F.3d 256, 265 (7th Cir. 1999). *Bivens* claims against the United States or federal agents acting in their official capacity are barred by sovereign immunity. *See, Daniels v. United States Department of Defense*, (No. 07 C 1622) 2008 U.S. Dist LEXIS 38123 *5(N.D. Ill, May 9, 2008)(Andersen, J.) *citing F.D.I.C. v. Meyer*, 510 U.S. 471, 485-86 (1994); *see also United States Postal Serv. v. Flamingo Indus. (U.S.A.) Ltd.*, 540 U.S. 736, 743 (2004). Consequently, Plaintiff's official capacity claims against Defendants are dismissed.

To the extent that Plaintiff is attempting to hold these Defendants liable in their individual capacities, Plaintiff must allege that they were personally involved in the alleged constitutional violation. Liability under the Civil Rights Act requires a defendant's personal involvement in any alleged constitutional violations. *See Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003).

Again, the Civil Rights Act, 42 U.S.C. § 1983 is the federal counterpart to a *Bivens* action. *See, e.g., Egervary v. Young*, 366 F.3d 238, 246 (3d Cir. 2004). Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under § 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted).

Although direct participation is not required, there must be at least a showing that the individual acquiesced in some demonstrable manner in the alleged constitutional violation. *See Palmer*, 327 F.3d at 594. In short, some casual connection or affirmative link between the action complained about and the official sued is necessary for §1983 recovery." *Hildebrandt*, 347 F.3d at 1039 (quoting *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995)); *see also Alejo v. Heller*, 328

5

F.3d 930, 936 (7th Cir. 2003) (*sua sponte* dismissal of complaint *Bivens* complaint upheld for failure to allege personal involvement against the defendants).

In the present case, Plaintiff merely alleges that he did work on an F.B.I. investigation, leading to the arrest of two suspects, and that while in state custody on an unrelated charge, he suffered physical injury at the hands of other state inmates. His allegation is that Defendants violated his constitutional rights by failing to protect him while in state custody.

The Defendants work for the Federal Bureau of Investigation, not for the IDOC. As such, they have no control over issues of inmate placement, or safety and security issues within IDOC. Interestingly, Plaintiff affirmatively pleads that when he informed IDOC internal affairs of his security issues relating to his work with the F.B.I., Plaintiff's story was confirmed, and he was moved to another facility on July 15, 2007. (See Plaintiff's complaint, p. 2 of 3). Consequently, Plaintiff alleges no personal involvement on the part of Defendants in any actionable alleged constitutional deprivation.

With regard to Plaintiff's equal protection claim, the Equal Protection Clause grants to all citizens "the right to be free from invidious discrimination in statutory classifications and other governmental activity." Generally, an equal protection claim requires allegations that a plaintiff: (1) is a member of a protected class, (2) was otherwise similarly situated to members outside the protected class, and (3) was treated differently than members outside the protected class. *See Brown v. Budz*, 398 F.3d 904, 916 (7th Cir. 2005); *Bennett v. Schmidt*, 153 F.3d 516, 518 (7th Cir. 1998). Plaintiff makes no allegations that he is a member of a protected group or that he was treated differently from members not in the protected class.

Under a class-of-one violation of equal protection claim, a single act against one individual can be a violation of the Equal Protection Clause. *See Baumgardner v. County of Cook*, 108 F. Supp. 2d 1041, 1054-56 (N. D. Ill. 2000). For a class-of-one theory, a plaintiff must allege that: "(1) ... he has been intentionally treated differently from others similarly situated and (2) that there is no rational basis for the difference in treatment or the cause of the differential treatment is a 'totally illegitimate animus' toward the plaintiff by the defendant." *McDonald v. Village of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004). Here, Plaintiff makes no allegations that he has been intentionally treated differently from others similarly situated, or that there is no rational basis for the difference in treatment, or that the cause of the differential treatment is due to a totally illegitimate animus toward him by Defendants. Accordingly, Plaintiff fails to plead an equal protection claim.

Plaintiff also attempts to bring a claim based on his allegation that Defendants failed to protect him from a serious risk of harm while incarcerated within IDOC violates his constitutional right to be safe. However, a prisoner does not have a protectable interest in his prison placement. *See Whitford v. Boglino*, 63 F.3d 527, 533 (7th Cir. 1995). Further, prisons are dangerous places, and inmates get there by committing violent acts, with a propensity to commit more. *Riccardo v. Rausch*, 359 F.3d 510, 514 (7th Cir. 2004). Negligence is not enough to find liability. *Id.* Instead, Defendants must have had the subjective belief that the Plaintiff faced a substantial risk of harm and done nothing to alleviate the threat of harm. *Id.*

The holding in *Riccardo*, however, applies to employees who work at the correctional facility where the inmate who suffered harm was incarcerated. In other words, *Riccardo* presupposes that Defendants were in a position to control the inmate's placement, or were authorized to make decisions effecting the inmate's security and safety. However, Defendants, working for the F.B.I.,

7

had no control over Plaintiff's placement within IDOC, nor over his safety and security. The IDOC has the sole discretion in placing, handling, and transferring inmates within its control. *See* 730 ILCS 5/3-2-2; *People v. Freed*, 328 Ill. App. 3d 459, 465-66 (2002).

Thus, Defendants could not be deliberately indifferent to Plaintiff's safety based on failing to protect him while in state custody. The legal causation applicable to both common law torts and constitutional torts is lacking. *See Jones v. City of Chicago*, 856 F.2d 985, 992 (7th Cir. 1998).

### B. Plaintiff's Motion to Amend his Complaint.

Plaintiff has filed a motion for leave to amend his complaint to again allege a claim under the Federal Tort Claims Act, 28 U.S.C. § 2675(a), against the United States of America. In support of his motion, Plaintiff cites *McNeil v. United States*, 508 U.S. 106 (1993), claiming that it stands for the proposition that when a plaintiff exhausts his administrative remedies after filing suit, making an FTCA claim (exhaustion of the claim with the appropriate federal agency is a statutory pre-requisite to filing suit, *see* 28 U.S.C. § 2675(a)), he may amend, adding his FTCA claim and the United States of America as a party.

On the contrary, the plaintiff in *McNeil* was denied leave to pursue his FTCA claim.

> The most natural reading of the statute indicates that Congress intended to require complete exhaustion of Executive remedies before invocation of the judicial process. Every premature filing of an action under the FTCA imposes some burden on the judicial system and on the Department of Justice which must assume the defense of such actions. Although the burden may be slight in an individual case, the statute governs the processing of a vast multitude of claims. The interest in orderly administration of this body of litigation is best served by adherence to the straightforward statutory command.

*McNeil*, at 112. With that, the U.S. Supreme Court upheld the Seventh Circuit's affirmation of the dismissal by the district court. Plaintiff may not amend his complaint in the present case. Without

8

regard to the question of whether such a suit would be timely, Plaintiff may not pursue his FTCA claim in this case, but rather must, once he has exhausted his administrative remedies, file a new lawsuit.

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss [#49] is granted. Plaintiff's motion for leave to file second amended complaint [#57] is denied. Plaintiff's motion for leave to submit an exhibit [#55] is denied as moot. The amended complaint is dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. This case is terminated.

Dated: **DEC 2 3 2009**

James B. Zagel
United States District Court Judge